UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GAGE LEE KNAUSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01375-JRO-CSW |
| | ) | |
| OLUSOLA, | ) | |
| WOOTEN, | ) | |
| FREDRICKS, | ) | |
| STORMS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

On August 9, 2024, Plaintiff Gage Knauss filed this action contending that his constitutional rights were violated while he was incarcerated at the New Castle Correctional Facility ("New Castle"). The Court's screening order allowed Knauss to proceed with Eighth Amendment deliberate indifference claims against Correctional Officer Wooten and Sergeant Fredricks and First Amendment retaliation claims against those two Defendants as well as Correctional Officer Olusola and Lieutenant Storms. Dkt. 18. These claims were based on allegations that on July 28, 2024, C.O. Wooten and Sgt. Fredricks locked Knauss in a shower overnight without any penological purpose and all four Defendants retaliated against Knauss after he complained about his bunk assignment and medical needs. *Id.*

The Defendants move for summary judgment arguing that Knauss failed to exhaust his available administrative remedies as required by the Prison

Litigation Reform Act ("PLRA") before filing this lawsuit.   For the reasons explained below, the motion for summary judgment, dkt. [32], is **GRANTED** and Mr. Gage's claims against the Defendants are **DISMISSED without prejudice.**

## I.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021).   It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant.  *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).

Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II. FACTUAL BACKGROUND

At all times relevant to the claims in this suit, Knauss was incarcerated at New Castle and subject to the Indiana Department of Correction ("IDOC")'s Offender Grievance Process. Dkt. 34-1 ¶ 4.

### A. Offender Grievance Process

In addition to receiving an orientation on the Offender Grievance Process at the Reception Diagnostic Center, upon arriving at New Castle, each inmate receives information about the Offender Grievance Process. *Id.* ¶ 14. Inmates, such as Knauss, also receive information about the Offender Grievance Process in their handbook. *Id.* Inmates have access to a current copy of the Offender Grievance Process in the law library where they can get assistance from law library staff and clerks about filing grievances. *Id.* ¶ 16. Grievance forms are available throughout the facility and inmates can request grievance forms from the grievance office, the law library, and by asking unit team members. *Id.* ¶ 15.

The Offender Grievance Process consists of three steps: (1) submitting a formal grievance to the grievance specialist on the correct form within 10 business days of the incident at issue; (2) submitting a written Level I appeal within 5 business days of receiving a response to the Warden or his designee; and (3) submitting a written Level II appeal to the IDOC's Central Office within 5 business days of receiving a response to the Level I appeal. *Id.* ¶ 5; *see* dkt. 34-

3

2 at 12–18.  Successful exhaustion of the grievance process requires timely pursuing each step.  Dkt. 34-1 ¶ 5.

According to the Offender Grievance Policy, the following matters are grievable issues: actions of individual staff; acts of reprisal for using the Offender Grievance Policy; and "any other concerns relating to conditions of care or supervision within the Department[.]"  Dkt. 34-2 at 3.  The following matters are not grievable: "Federal, State, and local law" and "Tort claims seeking monetary compensation."  *Id.* at 4.

**B. Plaintiff's Participation in the Grievance Process**

Grievance Specialist Melissa Rutledge is the custodian of all grievance records at New Castle, and she is in charge of logging each grievance into the IDOC's database and then tracking the responses.  Dkt. 34-1 ¶¶ 7–8.  She testified that, upon searching Knauss's grievance records in the IDOC's database, she was unable to locate any grievances related to the issues in this lawsuit.  *Id.* ¶ 11.

Rutledge found that on July 29, 2024, Knauss filed a grievance claiming that C.O. Olusola took his coffee and library books and asked for reimbursement. Dkt. 34-4 at 2.  This grievance was returned to Knauss unprocessed because "[r]elief in the form of monetary reimbursement of property is not a type of relief available through the offender grievance process.  The tort claim process is in place for these types of claims."  *Id.* at 1.  Moreover, in July and August of 2024, Knauss properly filed two grievances, but none of them dealt with the issues in this lawsuit—they dealt with medical treatment and prescriptions.  Dkt. 34-3

4

(Knauss Grievance Records); Dkt. 34-1 ¶ 12.  Knauss properly appealed the grievance he filed on July 22, 2024, to the Warden.  Dkt. 34-3.

With the help of staff from the law library, Knauss submitted a sworn statement that he submitted two grievances on July 29, 2024, the day after the events at issue in this lawsuit occurred.  Dkt. 45 at 3.  The first grievance dealt with Knauss's missing property, which is not an issue in this case.  *Id.* at 4; *see* dkt. 18.  The second grievance dealt with the Defendants' treatment of Knauss in the restrictive housing unit, which is an issue in this lawsuit.  *Id.*  There is no record of the second grievance.[1]

Knauss states that the law library staff told him that he did the right thing by filing the two grievances, but that they also told him to submit his complaint for the instant lawsuit because he sought monetary damages.  *Id.*  As such, Knauss submitted his complaint for this lawsuit on August 6, 2024, with the help of law library staff.  *Id.*  Knauss claims that he is "not familiar" with the Offender Grievance Process requirements and that is why he asked for help from the law library.  *Id.* at 5.

### III. DISCUSSION

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions.  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether

---

[1] Knauss attached various grievances from August, September, and November of 2025 to his response, but none of these grievances involves the issues in this lawsuit.  *See* dkt. 46 at 7–10.

they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). "An inmate must comply with the administrative grievance process that the State establishes. . . ." *Id.*; *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) (the mandatory language of the PLRA "means a court may not excuse a failure to exhaust..."). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "Because exhaustion is an affirmative defense," Defendants face the burden of establishing that "an administrative remedy was available and that [Knauss] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

Knauss's response to Defendants' motion for summary judgment appears to concede that he did not follow the Offender Grievance Process before filing this lawsuit.[2] Although he claims that he submitted a grievance related to the events

---

[2] Knauss's response was filed with the Court on March 30, 2026. *See* dkts. 45, 46, 47. The Court deems the response timely because it was signed and marked as received by the law library at New Castle on March 17, two days before the deadline to respond. *See* dkt. 38 (extending response deadline to March 19, 2026); *Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (explaining that pursuant to the "prison mailbox rule," a pro se

in this lawsuit on July 29, 2024, he makes no attempt to argue that he appealed that grievance through the proper channels.[3]  Instead, Knauss argues that the Offender Grievance Process was not available to him and that the policy does not require him to file grievances about the issues in this lawsuit.  Neither of these arguments defeat the Defendants' showing that Knauss failed to exhaust his administrative remedies related to the July 28 incident.

**A. The Offender Grievance Process Was Available to Knauss**

Knauss argues that the Offender Grievance Process was not available to him.  To support this claim, he filed a declaration stating that he is "not familiar" with the Offender Grievance Process requirements and had to receive help from the law library.  Dkt. 45 at 5.  Defendants argue that the Offender Grievance Process was available to Knauss because he received information about it during orientation, he had ongoing access to the policy and grievance forms, and he had access to help with filing grievances from staff at the law library.

"An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."  *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted).  "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be

---

prisoner's complaint is deemed filed when it is handed over to prison staff for mailing, not on the date it is received by the clerk of the court); *Ingram v. Jones*, 507 F.3d 640, 643-45 (7th Cir. 2007).

[3] Assuming that on July 29, 2024, Knauss timely filed a grievance related to the events on July 28, it would have been impossible for him to fully exhaust his administrative remedies due to the timing alone.  Knauss filed this lawsuit on August 6, 2024, merely nine days after July 29.

obtained.'"  *Id.*  The availability requirement "has teeth."  *Smallwood v. Williams*, 59 F.4th 306, 313 (7th Cir. 2023).  "The PLRA exhaustion requirement does not demand the impossible . . . [r]emedies that are genuinely unavailable or nonexistent need not be exhausted."  *Id.* (internal quotations and citations omitted).

*Ross v. Blake* identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  578 U.S. at 643–44.

In this case, Knauss's claim that he is "not familiar" with the Offender Grievance Process does not demonstrate that it was unavailable to him.  There is no evidence that the policy operated as a dead end or that an ordinary prisoner would not be able to figure it out.  Indeed, Knauss received help from the law library to help him navigate the process.  Knauss appears to argue that the law library staff gave him bad information, but this has no support in the record.  Knauss testified that the law library told him he did a good job by filing two grievances because he had two different claims—one about property and one about conditions of confinement.  They also told him that he could not receive monetary compensation through the Offender Grievance Process and would have

to file a lawsuit to receive such compensation. No one told Knauss not to submit his grievances. No one told him not to appeal the grievances. The additional advice regarding his claims would not deter an ordinary prisoner from following these core requirements of the Offender Grievance Process.

Moreover, Knauss has not disputed the Defendants' evidence that he successfully filed two grievances on unrelated matters in July and August of 2024, one of which was properly appealed. *See* dkt. 34-3. These grievances show that the Offender Grievance Policy was available to Knauss during the time he had to grieve the issues in this lawsuit. *See, e.g., Gakuba v. Henderson*, 2022 WL 17436513, at *2 (7th Cir. Dec. 6, 2022) (affirming summary judgment where the plaintiff "showed through his repeated filing of grievances at this time that he was physically able to pursue administrative remedies"). Lastly, there is no evidence that anyone obstructed Knauss's efforts to file grievances about the July 28 incident.

In sum, Knauss has not defeated the Defendants' initial showing that the Offender Grievance Process was available to him following the July 28 incident.

**B. The Offender Grievance Policy Required Knauss to File Grievances Before Filing this Lawsuit**.

Knauss also argues that he did not have to file grievances related to the issues in this lawsuit because the Offender Grievance Policy designates "Federal, State, and local law" and "Tort claims seeking monetary compensation" as non-grievable issues. *See* dkt. 45 at 5; Dkt. 46 at 3–5. For one, Knauss is not proceeding in this lawsuit on anything resembling a tort claim. Indeed, the Court did not screen through any negligent deprivation of property or deprivation of

9

property without due process claims.  *See* dkt. 18.  His only potentially viable claims are constitutional claims.

Moreover, the fact that Knauss seeks monetary compensation for his constitutional violations is irrelevant.  His complaint alleges matters that are explicitly covered by the Offender Grievance Policy and for which the PLRA requires exhaustion.  *See* dkt. 34-2 at 3 (stating that the Offender Grievance Policy covers "actions of individual staff," "acts of reprisal for using the Offender Grievance Policy," and "any other concerns relating to conditions of care or supervision within the Department" are appropriate matters for grievances); *Porter*, 534 U.S. at 532.  Knauss did not do so.

## IV. CONCLUSION

The Defendants have met their burden of proving that Knauss "had available [administrative] remedies that he did not utilize."  *Dale*, 376 F.3d at 656.  The undisputed record shows that the Offender Grievance Process was available to Knauss and that the Offender Grievance Process covered the issues in this lawsuit.  Yet, Knauss failed to complete the process.

Accordingly, the Defendants' motion for summary judgment, dkt. [32], is **GRANTED**.  Knauss's claims are **DISMISSED without prejudice**.  *Ford v. Johnson*, 362 F.3d 395, 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").  Final judgment shall issue by separate entry.

    **SO ORDERED.**

    Date:  8/7/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

10

Distribution:

GAGE LEE KNAUSS
299347
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com